## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ERIK JOHNSON and MATTHEW TOPORSKI, on behalf of themselves and all other persons similarly situated, known and unknown, )<br>)<br>)<br>) | |
| ) | Case No. 12 C 1018 |
| **Plaintiffs,** ) | |
| ) | Judge Gettleman |
| v. ) | |
| ) | Magistrate Judge Keys |
| PINSTRIPES, INC., PINSTRIPES NORTHBROOK, LLC, and DALE R. SCHWARTZ, )<br>)<br>) | |
| **Defendants.** ) | |

**REPLY IN SUPPORT OF PLAINTIFFS' COMBINED MOTION
FOR CLASS CERTIFICATION OF THEIR IMWL CLAIMS AND
FOR COLLECTIVE ACTION NOTICE UNDER THE FLSA**

Plaintiffs, for themselves and similarly-situated persons, submit their reply in support of their combined motion for class certification under the Illinois Minimum Wage Law (IMWL), and for notice under the Fair Labor Standards Act (FLSA), for Defendants' failure to pay minimum wages, and state as follows:

Douglas M. Werman  
Maureen A. Salas  
David E. Stevens  
Werman Law Office, P.C.  
77 West Washington, Suite 1402  
Chicago, Illinois 60602  
312/419-1008  

Jamie G. Sypulski  
Law Office Jamie Golden Sypulski  
150 South Michigan Avenue, Suite 1000  
Chicago, Illinois 60601  
312/332-6202  

Attorneys for Plaintiffs

## I. INTRODUCTION

Defendants characterize their failure to properly pay their tipped employees the lawful tip-credit wage rate effective in 2010 as an "honest mistake." Perhaps *that* may be true, but what is absolutely false is their claim that they "voluntarily and promptly" corrected that "mistake," or the "mistake" of unlawfully calculating the overtime rate of tipped employees.

Plaintiff Johnson informed Defendants that they had failed to properly pay tipped employees, by e-mail and in two different meetings, in January and February 2011. Defendants' "prompt" response was to do nothing: they did not pay their tipped employees the owed wages, nor did they attempt to determine if they had made other mistakes in paying those employees. They had. In July 2011, six months after Plaintiff Johnson informed Pinstripes of the improper wage rate, and a year after that rate had gone into effect, Pinstripes received notice from the Illinois Department of Labor that the Northbrook Pinstripes would be audited.

Laura Kilburg immediately wrote an e-mail to Defendant Schwartz, which read in part: "I didn't want to ask too many questions [of the IDOL auditor] in case it was just Northbrook *I didn't want her looking into South Barrington as well*. She wanted to go back to 2008, *but I told her our records on Paylocity only went back to 2009 and she was fine with that*. I'm sure she'll see that *we did not pay minimum wage to the servers during that wage increased time*. I do not know how to avoid the IL Dept of Labor. I hope to find out during the audit who the employee is." Ex. D, Kilburg e-mail Schwartz re IDOL Audit, PINJ 8118-19 (emphasis added).

The IDOL auditor did perform a payroll audit in August 2011, of Northbrook employees only, and found not only that Defendants had failed to pay tipped employees the proper tip-credit wage rate for the preceding 13 months, but that they had also unlawfully calculated overtime pay

1

for the tipped employees. But, Defendants were successful in hiding from the IDOL auditor that they had another restaurant in South Barrington with the same unlawful pay practices. Defendants' response is silent as to whether that was an honest mistake.

Even after the IDOL audit, Defendants did *not* pay the owed wages to the Northbrook tipped employees. On November 21, 2011, Defendants received a "NOTICE OF LEGAL ACTION" letter from the IDOL stating that, because Defendants had failed to comply, the Department was referring the matter to the Attorney General's office for court action. Ex. C, IDOL Audit Documents, PINJ 5769. It was only then, months after the August 4 audit, and close to one year after Plaintiff Johnson apprised Defendants of the unlawful wage rates, did Defendants finally pay their Northbrook tipped employees – or at least some of them.

In the meantime, Defendants knew that they had the same unlawful pay practices at the South Barrington Pinstripes. They "promptly" did nothing there too. Only on March 29, 2012, some 13 or 14 months after Plaintiff Johnson report the violation, 21 months after the minimum wage law changed, and six weeks after this lawsuit had been filed, did Defendants make certain payments to tipped employees at South Barrington and some tipped employees at Northbrook. Ex. B, Rule 30(b)(6) Dep. (Soukop 2d) 74:24 – 76:21; Ex. B, Rule 30(b)(6) Dep. (Soukop 1st) 172:8-20 (no one other than Pinstripes determined whether the "internal audit" correctly paid all owed wages); *see also* Ex. H, Pinstripes Check Register, dtd 3/29/2012 (under seal).

Neither the IDOL, nor any court, was involved in that March 2012 payment, and Defendants paid no liquidated damages or two percent additional damages to the affected tipped employees. Ex. B, Rule 30(b)(6) Dep. (Soukop 2d) 23:9 – 23:19. Because such damages cannot be waived by employees in an employer's attempt at private resolution, all employees that were

2

purportedly paid in March 2012 at South Barrington and Northbrook retain the right to seek those damages, as well as any other wages that may have been missed in Defendants' effort to "promptly" correct their "brief, honest mistake." Defs.' Mem. Opp. at i, 11.

The record before this Court reflects in Pinstripes a bumbling, feckless employer that failed to apprise itself of the most fundamental obligations of federal and state wage laws. And of course, employers are not excused from their actions, or inaction, taken out of ignorance. But when an employer knowingly fails to pay their employees, particularly low-wage employees, knowingly withholds material information from a state agency empowered by the Illinois legislature to enforce the wage laws on behalf of those employees, and then pays those employees only under compulsion of litigation, actual or threatened, such an employer has burst the bounds of ignorance and fecklessness, and entered deeply into the territory of willful, knowing and unlawful conduct.

Defendants' response to Plaintiffs' combined motion likewise reflects their view of 'honest mistakes.' Both as to the substantive laws, and as to the showing necessary for class certification and for Section 216(b) collective action notice, Defendants either do not know or do not care to learn. Defendants nonetheless make crucial concessions that demonstrate that Plaintiffs' combined motion should be granted.

Plaintiffs allege that Defendants violated federal and state minimum wage and overtime laws in the following manner: (1) utilizing tipped employees paid less than minimum wage to perform duties outside the tipped occupation; (2) failing to inform tipped employees of the provisions of Section 3(m) of the FLSA; (3) utilizing gratuities of tipped employees, what Defendants call the "house tip," for their own purposes, in violation of Section 3(m); and as

3

noted above (4) failing to pay South Barrington tipped employees, and certain Northbrook tipped employees, proper tip-credit and overtime wages, which includes liquidated damages under the FLSA and two percent damages under the IMWL.

Regarding their use of tipped employees to perform non-tipped duties, Defendants admit that they required tipped employees to perform extensive "sidework" duties, duties that are amply established in Pinstripes training, operation and SOP manuals, and that while performing that work Defendants paid tipped employees the sub-minimum, tip-credit wage rate.

For purposes of Plaintiffs' motion, these admissions are enough. Defendants' practice of requiring tipped employees to perform these duties at less than minimum wage is the "glue" that satisfies commonality and results in common issues predominating over individual ones in the claim. While Defendants assert that the performance of the "sidework" duties by tipped employees is permissible, and does not result in the forfeiture of the tip-credit, that is of course an issue for this Court on the merits. However this Court will decide that question, that decision will resolve "in one stroke" the issue of liability on that claim for all tipped employees.

Defendants also failed to comply with the FLSA Section 3(m) requirement that employees be "informed" of the provisions of that subsection by the employer before that employer can take the tip credit on the wages if those employees. While their coverage of this issue is scant, Defendants contend that Plaintiffs must prove this claim, and in order to do so must offer testimony from each class member. It is, however, black-letter law that the Section 3(m) tip credit is an exception to an employer's minimum wage obligation, and as such the *employer* has the burden of establishing its entitlement to take that credit. Furthermore, establishing FLSA violations by representative evidence goes back as far as the Supreme Court's

decision in *Mt. Clemens* in 1946.

Plaintiffs also claim that Defendants took a portion of the "service charge" earned by tipped employees at banquet events, called "house tips" by Defendants, and unlawfully used them for their own purposes. (When working events, tipped employees are paid the tip-credit wage rate.) Plaintiffs make this claim because portions of the "service charge" are paid to the tipped employees working those events, and the non-tipped event sales staff, and thus never becomes part of Pinstripes's gross receipts. But even assuming the 20 percent event charge is a *bona fide* service charge, the proceeds of that service charge are not tips, and cannot be used as tip credit toward minimum wage under Section 3(m). In other words, if this Court determines that the event service charge is a genuine service charge, then Defendants were obligated to pay tipped employees working the events full minimum wage. They did not.

Plaintiffs have met the prerequisites of Rule 23 and the 'modest factual showing' standard of Section 16(b), and ask that the Court grant their motion.

## II. LEGAL STANDARD UNDER SECTION 16(b)

In their principal brief in support, Plaintiffs identified the legal standards under which this Court must rule on Rule 23 class certification and notice under Section 16(b). Mem. Supp. at 16-17, ECF No. 51.

Defendants claim that the Section 16(b) notice motion must be analyzed under the same standard as the Rule 23 class certification. Defs.' Mem. Opp. at 2-3, ECF No. 58. To the contrary, these two procedures have different requirements that have been accepted by the courts of this Circuit, and those requirement have not be changes by dictum in *Espenscheid v. DirectSat USA, LLC*. 707 F.3d 770 (7th Cir. 2013). In *Espenscheid*, the Court was reviewing the decertification order of a Wisconsin case that included 12 subclasses, including claims under the

5

FLSA. That decertification order was entered by the district court just two weeks before the jury trial was to begin. *Espenscheid v. DirectSat USA, LLC,* No. 09-cv-625-bbc, 2011 U.S. Dist. LEXIS 56062, at *4 (W.D. Wis. May 23, 2012). Thus, the decertification order, using the stricter standard, came well after both the opt-in period and discovery had closed.

The district courts of this Circuit use a two-stage approach to determine whether employees are similarly situated under Section 16(b) of the Act. *Nehmelman v. Penn Nat'l Gaming, Inc.,* No. 11 C 23, 2011 U.S. Dist. LEXIS 111485, at *9-11 (N.D. Ill. Sept. 29, 2011). In order for court-ordered notice to issue, plaintiffs at stage one need only make a "modest factual showing" that they are similarly situated to other potential claimants. *Anyere v. Wells Fargo, Co.,* No 09 C 2769, 2010 U.S. Dist. LEXIS 35599, at *3 (N.D. Ill. Apr. 12, 2010). After notice has issued and discovery concluded, the court makes a determination at the second stage, utilizing a stricter standard. *Id.* at 8. "The second stage does not begin, however, 'until potential plaintiffs have been given a chance to "opt-in" to the collective action and discovery is complete.'" *Betancourt,* 2011 U.S. Dist. LEXIS 43228, at *15 *quoting Persin v. CareerBuilder, LLC,* 2005 U.S. Dist. LEXIS 29727, 2005 WL 3159684, at *1 (N.D. Ill. Nov. 23, 2005).

No opted-in period has begun, much less ended, and merits discovery has not yet begun, much less closed. Defendants' effort to create a new "intermediate" standard for Section 16(b) notice approval must be rejected.

### III. ARGUMENT

**A. It Is Irrelevant To Commonality Or Predominance That Tipped Employees May Perform Different Duties On Different Shifts, Or That Employees Work Shifts Of Longer Or Shorter Duration, Because Liability For All Claims In This Case Can Be Determined On A Class-Wide Basis**

The commonality requirement of Rule 23(a)(2) depends on a common contention that is

6

capable of class-wide resolution, allowing the truth of an issue central to the claim to be determined "in one stroke." *Wal-Mart Store, Inc., v. Dukes,* 564 U.S. __, 131 S. Ct. 2541, 2551 (2011); *and see Clark v. Honey-Jam Café, LLC,* No. 11 C 3842, 2013 U.S. Dist. LEXIS 62461, * 7 (N.D. Ill. Mar. 21, 2013) (company-wide policy mandating performance of particular tasks principal issue of case along with whether compensation must paid at full minimum wage); *Driver, et al. v. AppleIllinois, LLC, et al.,* 265 F.R.D. 293, 311-12 (N.D. Ill. 2010) (common proof for liability whether defendant require tipped employees to perform non-tipped duties at tip-credit rate); *Haschak v. Fox & Hound, Rest. Grp., et al.,* 10 C 8023, 2012 U.S. Dist. 162476, at * 4 (N.D. Ill. Nov. 14, 2012) (same).

> Conceptually, there is a gap between an employee's claim that he or she has been improperly paid a sub-minimum, "tipped" wage for "untipped" labor on the one hand, and the existence of a class of persons who have suffered the same injury, such that the employee's claim and the class claim will share common questions of law or fact. *Cf. Wal-Mart,* 131 S.Ct at 2553 (citing *Falcon, 457 U.S. at 157-58*). *Here, Plaintiffs have bridged this gap by demonstrating that Defendants maintained a company-wide policy requiring its employees to perform "sidework" on a regular basis.*

*Haschak,* 2012 U.S. Dist. 162476, at *6 (emphasis added).

The predominance prong of Rule 23(b)(3) is met where a "'common nucleus of operative facts and issues' underlies the claims brought by the proposed class." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012). Thus, when common questions representing a significant aspect of the litigation can be resolved for all class members, predominance is satisfied. *Messner*, 669 F.3d at 815, *quoting* 7AA Wright & Miller, Federal Practice & Procedure § 1778 (3d ed. 2011). "[A] company-wide policy and its consistency with the law *vel non* creates a common question that predominates over the individual questions to which Defendants point." *Haschak,* 2012 U.S. Dist. 162476, at *11.

7

Further, it is black-letter law that where issues of liability can be made, applicable across the class, the predominance prong of Rule 23(b)(3) is satisfied. *See e.g., Messner,* 669 F.3d at 815; *Arreola v. Godinez,* 546 F.3d 788, 801 (7th Cir. 2008); *Carnegie v. Household Inter'l, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004). There are "legions" of such appellate decisions across the circuits. *Comcast Corp. v. Behrend.* ___ U.S. ___, 133 S. Ct. 1426, 1437 (2013) (Ginsburg and Breyer, JJ., dissenting) (citing cases).

### 1. Defendants Admit That Tipped Employees Were Required To Perform "Sidework" Duties, And Thus That They Had A Common Policy

Defendants admit, as they must given the detailed and extensive documentary evidence that they themselves created, that tipped employees were required to perform specific duties that Defendants euphemistically called "sidework." Defs.' Mem. Opp. at 5. Specific duties were assigned for specific shifts and specific stations within the venue, and Defendants' training and operational documents confirm that tipped employees were required to perform those specific duties. *See* Pls.' Mem. Supp., 7-9 (ECF No. 51).

Defendants maintain that they can require tipped employees to perform the various "sidework" duties while taking the tip-credit for that time.[1] Defs.' Mem. Opp. at 7-10. Plaintiffs assert that sidework duties like food preparation, cleaning, and event set-up are duties *unrelated to*[2] duties of a tipped occupation, and therefore the time tipped employees spend on those duties

---

[1] Defendants' assertion that tipped employees can be required to perform duties "not directly related to" tipped duties at the tip-credit wage rate, Defs.' Mem. Opp. at 8, is absolutely false. As the regulation that Defendants cite for that statement unambiguously states, "Such *related duties* in an occupation that is a tipped occupation need not by themselves be directed toward producing tips." *Id. quoting* 29 C.F.R. § 531.56(e).

[2] Contrary to Defendants' assertion about Plaintiffs' non-tipped duties claim, Mem. Opp. at

8

must be compensated at minimum wage. *See Driver v. AppleIllinois, LLC,* No. 06-6149, 2012 U.S. Dist. LEXIS 121332, at *63-67 (N.D. Ill. Aug. 27, 2012) (identifying tasks that cannot be duties related to the tipped occupation, which must be paid at full minimum wage, and granting class summary judgment).

Did Defendants' admitted company-wide practice requiring tipped employees to perform daily "sidework" duties, while paying them at the tip-credit rate, violate minimum wage laws outside their tipped occupation? With respect to both commonality and predominance, this Court will determine as a matter of law whether those duties are, or are not, tasks of a non-tipped occupation. *See Driver*, 265 F.R.D. at 312 (determining nature of duties legal issue for court). That determination will apply across the entire class of tipped employees.

### 2. Defendants Bear The Burden Of Establishing That They Informed Tipped Employees Of Section 3(m)

The FLSA is a remedial statute, and an employer who seeks to raise an exception to the minimum wage provisions of the Act bears the burden of proving its entitlement. *Auer v.*

---

8, that claim has nothing to do with the 20 percent maximum for *related duties* found in the U.S. Department of Labor Field Operations Handbook. DOL Handbook § 30d00(e), interpreting 29 U.S.C. § 531.56(e); ); *Fast v. Applebee's Int'l, Inc.,* 638 F.3d 872, 876 (8th Cir. 2011). "The Handbook states that an employer can take 'the tip credit for time spent in *duties related* to the tipped occupation . . . such duties must be 'incidental to the regular duties of the server' and must be 'generally assigned to the servers.'" *Fast,* 638 F.3d at 876 (citations omitted) (emphasis added). Plaintiffs' claim addresses the performance of unrelated duties – duties of a non-tipped occupation. *See Dole v. Bishop,* 740 F.Supp. 1221, 1228 (S.D. Miss. 1990) ("Because these cleaning and food preparation duties were not *incidental* to the waitresses' tipped duties, the waitresses were entitled to the full statutory minimum wage during these periods of time."); *Hodgson v. Frisch's Dixie, Inc.,* No. 6641, 1971 U.S. Dist. LEXIS 12029, at * 13 (W.D. Ky. Aug. 16, 1971) ("No tip credit can be taken by defendants for those hours the waitresses and carhops spent in performing 'nontipped' work as mentioned in Finding of Fact No. 12 above. See 29 CFR 531.56(e).").

*Robbins*, 519 U.S. 452, 462 (1997). An employer bears the burden of establishing its entitlement to the tip credit. *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979); *Pedigo v. Austin Rumba, Inc.,* 722 F. Supp. 2d 714, 722-25 (W.D. Tex. 2010). The requirements to take that tip credit are strictly construed. *Chu Chung v. New Silver Palace Rest.,* 246 F.Supp.2d 220, 229 (S.D.N.Y. 2002).

In 1974, Congress amended Subsection 3(m) to require that employers seeking to take a credit for gratuities given to tipped employees by customers must have "informed" their employees of the "provisions" of Subsection 3(m). Pub. L. No. 93-259, § 13, 88 Stat. 55 (1974). The Subsection was amended in 1996 to its current form. Pub. L. No. 104-188, § 2105(b), 110 Stat. 1755 (1996). That includes the following clause: "The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee *has been informed by the employer of the provisions of this subsection . . . .*" 29 U.S.C. §203(m) (emphasis added).[3]

Defendants have not much to say about whether tipped employees were informed of the provisions of Subsection 3(m), but what they do say is wrong. Defendants claim that Plaintiffs must prove, "with respect to each and every putative [sic] class member, that a member of Pinstripes management did not orally inform that putative class member about the necessary

---

[3] The requirements of Subsection 3(m) are explicit. The employer must inform the tipped employee of: (1) the cash wage the employee will receive; (2) the additional amount on account of tips on which the credit is claimed; (3) that the additional amount may not exceed the tips actually received; (4) that the employer cannot take the tip credit unless the employee has been informed of Section 203(m); and (5) that all tips received by the employee must be retained by that employee, except tip pooling among tipped employees is permitted. 29 C.F.R. § 531.59(b); *Driver, et al. v. AppleIllinois, LLC, et al.,* No. 06 C 6149, 2013 U.S. Dist. LEXIS 2542, * 21-22 (N.D. Ill. Jan. 8, 2013).

information under the FLSA." Defs.' Mem. Opp. at 16. That is false. If the employer seeks to take the tip credit under Subsection 3(m), *the employer* bears the burden of proof.

Defendants claim they have no "uniform policy" about what tipped employees are told regarding the tip credit, and whatever those employees are told "varies greatly." Defs. Mem. Opp. at 7. For Defendants who seemingly have a policy for everything, including a detailed diagram to inform employees where pesto is placed on a serving table, Ex. L, FOH SOP, P0297, that stretches credulity – unless Defendants had no policy and in fact never informed tipped employees about the provisions of the Subsection 3(m).

In any event, whatever tipped employees were told about that Subsection, if anything, either did or did not comply with the law and the regulations. Like the central issues of all the other claims, this Court will make that determination, and do so across the class.

### 3. This Court Will Determine As A Matter Of Law Whether The Event "Service Charge" Is A *Bona Fide* Service Charge

Plaintiffs claim that what Defendants call a "service charge" (and what they internally called a "house tip"), fails as *bona fide* service charge because that money is distributed to tipped employees and to the non-tipped event sales staff as salary, and thus never enters Defendants' gross receipts. *Reich v. ABC/York-Estes Corp.*, 91 C 6265, 1997 U.S. Dist. LEXIS 6874, at * 22-23 (N.D. Ill. 1997). If it is not a service charge, the fact that Defendants took their "house tip" violates Subsection 3(m). If, on the other hand, it is a service charge as Defendants claim, they still violated the tip credit provisions because a "compulsory charge for service . . . is not a tip, and cannot be counted as a tip received in applying the provisions of section 3(m) and 3(t)." 29 C.F.R. §531.55(a); *Reich,* 1997 U.S. Dist. LEXIS 6874, at *15-16.

In short, either Defendants had to permit the employees paid a tip-credit rate to keep all

11

the tips, or they could claim a service charge but pay the tipped employees *full* minimum wage for their event work. Defendants did neither.

> **4. Defendants Attempt To Pay Off Tipped Employees By Paying Less Than All Wages Owed, Including FLSA Liquidated Damages And Two Percent Damages Under the IMWL Was Improper, And The Tipped Employees Retain Their Right To Bring An Action On Those Unpaid Wages**

An employee's rights under the FLSA cannot be compromised or waived by private agreement, as this would thwart the legislative purpose the Act was created to effectuate. *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 740 (1981); *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 708-09 (1945). This includes waiver of liquidated damages available under the Act. *D.A. Schulte v. Gangi,* 328 U.S. 108, 115-116 (1946); *see also Dees v. Hydradry, Inc.,* 706 F. Supp. 2d 1227, 1237-38 (M.D. Fla. 2010) ("The employer remains liable for the unpaid wages, and the employee may sue to recover any wages (or liquidated damages) allegedly compromised by private agreement.")

Although Defendants had a chance to fess up to the IDOL auditor, they chose to "resolve" the failure to pay the proper tip-credit rate, and the failure to properly calculate overtime, outside the purview of the Department or the courts. In discovery, Defendants refused to identify of the tipped employees at South Barrington and Northbrook received payment on March 29, 2012. Ex. H, Pinstripes Check Register, dtd 3/29/2012 (under seal). That question, and whether Defendants paid the lawful amount of actual wages to the employees, must be determined with additional discovery after class certification.

What is clear is that Defendants did not pay those employees liquidated damages available under the FLSA, or two percent additional damages available under the IMWL. Ex. B,

Rule 30(b)(6) Dep. (Soukop 2d) 23:9 – 23:19. Defendants thus remain liable to those tipped employees for those damages, and Defendants must now must face the 'peril' of their decision.

### B. As Tipped Employees Named Plaintiffs Are Typical Of The Class Of All Employees Paid The Tip-Credit Wage Rate, Regardless Of Job Title

Much of what Defendants call a 'typicality' argument, Defs.' Mem. Opp. at 17-18, is nothing more than the failed predominance argument rehashed. But their claim that typicality fails because Name Plaintiffs were servers, and other tipped employees were bartenders and server assistants, reflects a superficiality that is surprising even coming from these Defendants.

Defendants admit that these other job positions, bartenders and server assistants, and their documents establish that those job positions were required to perform "sidework" duties. All tipped employee, regardless of job title, must be informed of the provisions of Subsection 3(m), and Defendants likewise admit that other tipped employees were paid less than minimum wage. Answer, ¶¶ 1, 10, 12, 13, 23-25 (ECF No. 12); Ex. B, Rule 30(b)(6) Dep. (Soukop 2d) 12:13-14; 14:13-20 (server assistants are paid between $6.50 and $16.50 per hour; bartenders between $6.50 and $11.50 per hour). Whether Defendants failed to pay any bartenders or server assistants the increased minimum wage beginning on July 1, 2010, or whether they failed to properly calculate overtime wages for those employees in those job positions, is a question that will be revealed in merits discovery.[4]

"Typicality under Rule 23(a)(3) is satisfied if a plaintiff's claim 'arises from the same event or practice or course of conduct that gives rise to the claim of the other class members, and

---

[4] As Plaintiffs explained in their initial memorandum (ECF No. 51, at 2, n.5), Defendants had a total of four opportunities to correctly identify the wages it pays to server assistants and bartenders, and each time provided different numbers.

if the claims are based on the same legal theory.'" *Haschak,* 2012 U.S. Dist. 162476, at *7, *quoting Keele v. Wexler,* 149 F.3d 589, 595 (7th Cir. 1998). The claims of Named Plaintiffs and those of all tipped employees are based on the same legal theory and the same practice of Defendants. Plaintiffs have met the typicality prerequisite.

        C.       **Superiority of Class Action Method**

Like Defendants' "typicality" argument, their "superiority" argument is nothing more than a predominance argument by another name.

Defendants claim "that the vast majority of Pinstripes employees have no interest in this litigation," is nothing but a hopeful surmise on their part, as is their suggestion that Plaintiffs must demonstrate a 'showing of interest' in order for notice of the collective action to issue.[5] Defs.' Mem. Opp. at 20.

Courts in this Circuit do not require a plaintiff seeking to give notice under Section 216(b) to demonstrate that other persons wish to participate in the lawsuit. *See, e.g., Garcia v. The Salamanca Group, Ltd.*, No. 07 C 4665, 2008 U.S. Dist. LEXIS 22852, at *9-10 (N. D. Ill. Mar. 24, 2008); *Heckler v. DK Funding, LLC,* 502 F. Supp. 2d 777, 779-80 (N. D. Ill. 2007); *but see Lance v. The Scotts Co.,* No. 04 C 5270, 2005 U.S. Dist. LEXIS 14949, 2005 WL 1785315 (N.D. Ill. July 21, 2005) (dictum). Indeed, virtually all courts in this Circuit considering Section 216(b) notice rule without any reference whatsoever to a 'showing of interest' requirement. *See, e.g., Boyd v. Alutiiq Global Solutions, LLC*, No. 11 C 753, 2011 U.S. Dist. LEXIS 88656, at *1 (N.D. Ill. Aug. 8, 2011). And where courts have expressly addressed such a requirement, it has

---

[5]    Of course, the 'modest factual showing' of Section 16(b) does not have a superiority prong. Because Defendants raise the issue in their response in the 'superiority' section, Plaintiffs address it here.

been roundly criticized and rejected as contrary to the remedial and humanitarian goals of the FLSA as expressed by the Supreme Court. *Garcia*, 2008 U.S. Dist. LEXIS 22852, at *9-10; *Heckler,* 502 F. Supp. 2d at 779-80.

> **D. Notices Like Plaintiffs' Proposed Notice Have Been Approved By Other Courts In This District, And Defendants' Generalized Objections Carry No Weight**

The notice that Plaintiffs propose has been approved by other courts in this District, most recently by Judge Norgle in *Clark,* 2013 U.S. Dist. LEXIS 62461, * 1.

Defendants voice no specific objections; instead, they want the Court to order the parties to confer on the form of the notice, claiming that is "standard practice." It may be 'standard practice' where the plaintiff does not submit a proposed notice along with the motion, but Plaintiffs here did submit a notice, one that has been previously approved by another court. If Defendants had specific, legitimate objections to the language of the notice, they should have raise those specific objections. They have not, and the only consequence of their request is to further delay the notice process.

Plaintiffs' proposed notice should be approved.

## IV. CONCLUSION

WHEREFORE, for the foregoing reasons and those set forth in Plaintiffs' motion, memorandum of law and supporting materials, Plaintiffs request that the Court grant their combined motion.

Dated: July 17, 2013

Respectfully submitted,

ERIK JOHNSON, MATTHEW TOPORSKI

s/Jamie G. Sypulski
One of the Attorneys for Plaintiffs

15