IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIK JOHNSON and MATTHEW TOPORSKI, on behalf of themselves and all other persons similarly situated, known and unknown, ) ) ) ) | |
| Plaintiff, ) | No. 12 C 1018 |
| v. ) ) | Judge Robert W. Gettleman |
| PINSTRIPES, INC., PINSTRIPES NORTHBROOK, LLC, and DALE R. SCHWARTZ, ) ) ) ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs Erik Johnson and Matthew Toporski, individually and on behalf of all others similarly situated, have brought a five-count putative collective action complaint against their former employers, Pinstripes Inc., Pinstripes Northbrook LLC, and Dale Schwartz[1] (collectively, "defendants") for violations of the Illinois Minimum Wage Law (IMWL), 820 ILCS 105/1, and the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et. seq. Plaintiffs move for conditional class certification of their IMWL claims and issuance of a notice of the collective action under the FLSA. For the reasons stated below, plaintiffs' motion is granted.

## **FACTS**

Defendants own and operate two restaurant and banquet facilities in suburban Chicago, each named Pinstripes Bowling Bocce Bistro ("Pinstripes"). The putative plaintiff classes are

---

[1] Pinstripes, Inc., is a Delaware corporation that operates the Pinstripes restaurant in South Barrington, Illinois. Pinstripes Northbrook, LLC, is a Colorado limited liability company that operates the Pinstripes restaurant in Northbrook, Illinois. Schwartz is the chief operating officer and majority shareholder of Pinstripes, Inc., and the chief operating officer and managing member of Pinstripes Northbrook, LLC.

composed of servers, server assistants, and bartenders who are currently or were formerly employed in these restaurants. These plaintiffs were paid a tip-credit wage. Under Illinois law and the FLSA, an individual engaged in an occupation in which he or she regularly and customarily receives more than $30 per month in tips may be legally paid a wage under minimum wage. 29 U.S.C. § 203(t). This tip-credit wage allows an employer to claim a percentage of the employee's wage as satisfied by gratuities. In Illinois, the tip-credit may be up to 40 percent of an employer's wage obligation. This exemption from the minimum wage requirement is limited. Time spent by tipped employees performing required duties that are not related to the tipped occupation must be compensated in accordance with minimum wage requirements. See 29 C.F.R. § 531.56(e).

Plaintiffs claim that defendants took advantage of the tip-credit system to calculate their wages improperly and, in doing so, violated both the IMWL and the FLSA in a number of ways.[2] First, plaintiffs claim that defendants did not apply the minimum wage increase that was effective July 1, 2010, to plaintiffs' wages. Defendants therefore paid plaintiffs a tipped wage and overtime wage lower than was permissible by federal and state law. Second, plaintiffs claim that defendants improperly paid plaintiffs a tipped wage when employees were engaged in duties not related to their tipped duties. Third, plaintiffs claim that defendants failed to inform tipped

---

[2]There is some dispute about the exact hourly wage of some tipped employees, but defendants admit that servers, bartenders, and server assistants are paid pursuant to the tip-credit provisions of the FLSA and IMWL. Plaintiffs allege that defendants always took the full tip-credit for servers equal to 40% of Illinois minimum wage. For some tipped employees, namely bartenders and server assistants, defendants allege that they took a lesser tip-credit, resulting in a higher hourly wage. Defendants also allege that, in some instances, bartender and server's assistant wages were greater than the minimum wage. Defendants do not dispute that servers, server assistants, and bartenders were paid a tip-credit wage.

employees of the provisions of Section 3(m) of the FLSA, as required by the act. 29 U.S.C. §203(m). Finally, plaintiffs allege that defendants improperly appropriated a portion of the "house tip" paid by customers when Pinstripes locations held private events.

Plaintiffs seek to certify three classes for their IMWL minimum wage claims:

Class One: All persons employed by defendants at the Northbrook Pinstripes and South Barrington Pinstripes, from February 13, 2009, to the conclusion of this action, who worked as tipped employees earning a sub-minimum, tip credit wage rate, and who performed duties unrelated to their tipped occupation, for which they were not paid minimum wage.

Class Two: All persons employed by defendants at the Northbrook Pinstripes and South Barrington Pinstripes, from February 13, 2009, to the conclusion of this action, who worked as tipped employees earning a sub-minimum, tip credit wage rate, and who worked private events in which a "service charge" was paid by the customer.

Class Three: All persons employed by defendants at the Northbrook Pinstripes and South Barrington Pinstripes, from February 13, 2009, to the conclusion of this action, who were not paid the proper minimum wage rate or overtime at the properly calculated time and one-half rate, plus two percent damages under the IMWL.

**Legal Standards**

**A.    Rule 23 Class Actions**

Districts courts have broad discretion to determine whether certification of a class action is appropriate. Keele v. Wexler, 149 F.3d 589, 592 (7th Cir. 1998). Federal Rule of Civil Procedure 23, which governs class actions, requires a two-step analysis to determine if class certification is appropriate. First, plaintiffs must satisfy the four requirements of Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and

3

adequately protect the interests of the class." Fed. R. Civ. P. 23(a); Farmer v. DirectSat USA, LLC, 08 CV 3962, 2013 WL 2457956 (N.D. Ill. June 6, 2013).

Second, the action must also satisfy one of the conditions of Rule 23(b). Joncek v. Local 714 International of Teamster Health and Welfare Fund, 1999 WL 755051, at *2 (N.D.Ill. Sept.3, 1999) (and cases cited therein). Plaintiffs seek certification under Rule 23(b)(3), which requires plaintiffs to demonstrate that: (1) common questions predominate over any questions affecting only individual members; and (2) class resolution is superior to other methods for the fair and effective adjudication of the controversy. Portis v. City of Chicago, 2003 WL 22078279, at *3 (N.D.Ill. Sept.8, 2003) (quoting Joncek, 1999 WL 755051, at *7). Plaintiffs have the burden of showing compliance with Rule 23. Cwiak v. Flint Ink Corp., 186 F.R.D. 494, 496 (N.D.Ill.1999).

**B.     Collective Action Certification Under FLSA**

Section 16(b) of FLSA permits plaintiffs to bring a collective action against an employer for unpaid minimum wages or overtime compensation on behalf of themselves and others "similarly situated." 29 U.S.C. § 216(b). A collective action under § 216(b) differs from a class action under Fed. R. Civ. P. 23 in that Rule 23 binds class members unless they opt out, whereas collective action members are bound under § 216(b) only if they opt into the action by providing their written consent. Woods v. New York Life Ins. Co., 686 F.2d 578, 580 (7th Cir. 1982).

Courts in this circuit utilize a two-step approach to determine whether individuals are similarly situated under Section 16(b) of the FLSA. Nehmelman v. Penn Nat. Gaming, Inc., 822 F. Supp. 2d 745, 750 (N.D. Ill. 2011). At the first stage, "the court looks for no more than a 'minimal showing' of similarity." Howard v. Securitas Security Services, 2009 WL 140126, at

*5 (N.D.Ill. Jan. 20, 2009). Although this standard is lenient, "a modest factual showing cannot be founded solely on allegations of the complaint; some factual support must be provided, such as in the form of affidavits, declarations, deposition testimony, or other documents." <u>DeMarco v. Northwestern Memorial Healthcare</u>, No. 10 C 397, 2011 WL 3510905, at *1 (N.D.Ill. Aug. 10, 2011) (quoting <u>Anyere v. Wells Fargo, Co.</u>, No. 09 C 2769, 2010 WL 1542180, at *2 (N.D.Ill. Apr. 12, 2010)). A plaintiff must demonstrate "a factual nexus between the plaintiff and the proposed class or a common policy that affects all the collective members." <u>Howard</u>, 2009 WL 140126, at *2.

  The second stage occurs later in the litigation, after all or a significant portion of discovery has been completed, and is much more stringent. <u>Rottman v. Old Second Bancorp, Inc.</u>, 735 F.Supp.2d 988, 990 (N.D.Ill. 2010). "Once it is known which employees will be part of the class, the Court must reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." <u>Rottman</u>, 735 F.Supp.2d at 990 (quoting <u>Jirak v. Abbott Laboratories, Inc.</u>, 566 F.Supp.2d 845, 848 (N.D.Ill. 2008)). At that time, a defendant may "move to decertify the case or divide the class into subclasses." <u>Betancourt v. Maxim Healthcare Servs., Inc.</u>, No. 10 C 4763, 2011 WL 1548964, at *5 (N.D.Ill. Apr. 21, 2011) (quoting <u>Smallwood v. Illinois Bell Tel. Co.</u>, 710 F.Supp.2d 746, 753 (N.D.Ill. 2010)).

**DISCUSSION**

I.   **IMWL Classes: Rule 23(a) Factors and Rule 23(b)**

Defendants do not contest the numerosity or adequacy of representation requirements under Rule 23(a). Because the commonality and predominance questions are closely related, the court will evaluate those two factors first, followed by typicality and superiority.

   A.   **Commonality**

The second prong of the Rule 23(a) analysis is commonality, which requires questions of law or fact common to the class. Fed. R. Civ. P. 23. There must be a "common contention of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2545, 180 L. Ed. 2d 374 (2011). Plaintiffs allege that questions of law and fact are common to the classes and satisfy this standard. Specifically, for Class One, plaintiffs allege that whether defendants had a policy of paying employees tipped-wages while requiring them to perform duties outside their tipped occupation is a common question that will determine liability "in one stroke." For Class Two, plaintiffs argue that whether defendant inappropriately took a portion of plaintiffs' tips during private events is the necessary common question. For Class Three, plaintiffs claim that whether defendants paid employees all minimum wages and overtime wages owed including liquidated damages is a common question of law and fact. Defendants argue that plaintiffs have failed to satisfy the burden of proving commonality.

Regarding Class One, plaintiffs allege that defendants required plaintiffs to complete "side work," or work unrelated to employees' tipped occupation. Plaintiffs presented training

6

manuals for required side work, which included food preparation and cleaning of side paneling, among other tasks. Plaintiffs also presented depositions of employees detailing this required side work.

Defendants counter that the side work duties of the proposed plaintiffs vary greatly based on a number of factors, including: the position of the employee (server, server assistant, bartender); what area of the restaurant the individual worked in; the time and day of the shift; and the length of the shift. Because side work is so varied, defendants argue that there is not a common question that will resolve the claims of the whole class. Defendants also claim that tipped employees may be paid the tip-credit wage even when they engage in activities not directly related to producing tips. Citing 29 C.F.R. 531.56(e) and the Department of Labor (DOL) Field Operations Handbook, defendants argue that the DOL has established a "20% rule." Under this rule, defendants argue, tipped employees who spend "some time" engaged in duties that are not tip producing may still be engaged in a tipped occupation. In contrast, where tipped employees spend a "substantial amount of time" (more than 20%) performing general preparation work or maintenance, tip-credit may not be claimed. Defendants claim that there is no violation of the IMWL because the side work duties of the plaintiffs were "related duties." Because the determination of a violation rests on a temporal factor, defendants argue that no common question of fact unites plaintiffs.

In similar cases, other courts in this district have recognized that "[c]onceptually, there is a gap between an employee's claim that he or she has been improperly paid a sub-minimum, 'tipped' wage for 'untipped' labor on the one hand, and the existence of a class of persons who have suffered the same injury, such that the employee's claim and the class claim will share

common questions of law or fact." Haschak v. Fox & Hound Rest. Grp., 10 C 8023, 2012 WL 5509617 (N.D. Ill. Nov. 14, 2012). In Haschak, the court found that plaintiffs "bridged the gap" between the individual and class claims by "demonstrating that Defendants maintained a company-wide policy requiring its employees to perform 'sidework' on a regular basis." Id.

In the instant case, plaintiffs have likewise submitted evidence of a company-wide policy of side work. The common question of whether employees still engaged in "tipped" labor through required side work is therefore common to the entire class. As such, the commonality requirement of Rule 23 is satisfied for Class One.

Defendants response to the motion for class certification does not advance any argument regarding plaintiffs' inability to satisfy the commonality requirement for Class Two or Class Three. Those arguments are therefore waived.

**B.     Predominance of Common Questions**

Defendants also assert that individual fact determinations predominate the common questions of law and fact in plaintiffs' proposed classes. To satisfy the predominance component of Rule 23(b)(3) there must be a common nucleus of facts and issues across the proposed class. See Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 815 (7th Cir. 2012), reh'g denied (Feb. 28, 2012).

For Class One, plaintiffs allege that defendants had a policy of paying tipped employees the tip-credit rate while performing non-tipped work. Defendants raise largely the same arguments regarding predominance as they do regarding commonality. Defendants claim that there are significant individualized issues, including what type of side work each employee

8

performed, how long each employee performed that side work, and whether that side work was related to that individual's duties.

The question of whether defendants did have a policy of required unrelated side work is one that can be resolved on a class wide basis because there is a common nucleus of facts and issues. Indeed, in Haschak, the court found that such an allegation satisfies the Rule 23(b)(3) predominance standard: "a company-wide policy and its consistency with the law *vel non* creates a common question that predominates over the individual questions to which Defendants point." Haschak, 2012 WL 5509617 at *4. Plaintiffs have submitted depositions and manuals to demonstrate that defendant had this company-wide policy in place, and the evidence within the manuals shows that defendants did require side work to be done by tipped employees. The question of whether this side work was related to the employees' tipped work may be answered "in one stroke." Whether any unrelated side work rose to the level of a violation of the IWML is a merits question that should disposed of at the merits stage. At the class certification stage, plaintiffs have sufficiently demonstrated that there is a class-wide question of liability based on the side work policy and that this question predominates over individual damages questions. For Class Two, plaintiffs also allege that defendants either: (1) improperly appropriated a portion of the "service charge" assessed at private events, thus depriving employees of their lawful tip, or (2) paid employees at a tip-credit wage during private events, even when gratuities were not given, in violation of IMWL.

Defendants argue that the court must consider the "customer's understanding of the payment" when determining whether a service charge is a tip or a bona fide service charge. Because individual customers' understandings of the payment may vary from event to event,

9

defendants argue that plaintiffs will have to introduce testimony regarding every single event, and therefore individualized questions will predominate and such an inquiry would be incompatible with a class claim.

Plaintiffs counter that there is a viable claim regardless of whether the service charge was bona fide or not. If defendants assessed the "service charge" as a *bona fide* service charge, then that service charge is not a tip and cannot be used as tip credit towards the minimum wage. If, on the other hand, the service charge was a tip, then it was improper for defendants to appropriate a portion of that tip for their own revenues. Consequently, there is a common question of the status of the service charge that will dictate liability on plaintiffs' claim that predominates.

For Class Three, plaintiffs also claim that defendants failed to pay tipped employees the lawful tip-credit wage rate and failed to calculate overtime pay properly when they failed to properly adjust the minimum wage and tip-credit wage paid to employees after the minimum wage was raised in July 2010.[3] Although plaintiffs concede that defendants have paid some employees the amounts due, they argue that these payments, as well as liquidated damages, were private resolutions of the claims and as such are subject to review and approval by the court. Defendants argue that all servers have been properly compensated for the "brief, honest mistake."

---

[3]Plaintiffs seek to include individuals employed by defendant since February 2009 in this class. Since the violation is not alleged to have occurred until after the minimum wage was increased in 2010, the court will not approve this date. The class definition must be amended to reflect the proper time period.

The question of whether defendants failed to pay their employees the adjusted rate is a claim that may be settled on a class-wide basis. The wage rate paid is a question that predominates over the question of any remaining individual damages owed to the employees. Class Three therefore meets the predominance requirement.

**C.     Typicality**

The third prong of the Rule 23(a) test is typicality. Typicality under Rule 23(a)(3) is satisfied when the plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." Keele v. Wexler, 149 F.3d 589, 595 (7th Cir. 1998). Plaintiffs allege that their claims arise from the same conduct by defendants. Defendants argue that the individual plaintiffs are servers and therefore cannot represent server assistants or bartenders. Defendants also argue that plaintiffs are atypical even as to other servers because each server's duties and activities varied every week, and so the injuries to the representative plaintiffs will differ from other class members.

The definition of Class One meets the typicality requirement. Plaintiffs claim that defendants had a policy in place that required all employees to complete side work unrelated to their tipped duties. This is an alleged practice or course of conduct by defendant that was common to all employees, and their claims are all based on the same theory of liability. Even though servers do not perform the same side work as bartenders or server assistants, it is the fact of required side work, not the nature of that work, that will determine liability.

The definition of Class Two likewise meets the typicality requirement. Plaintiffs claim that defendants had a policy of retaining part of the service charge assessed at private events, and

that they were not legally allowed to do so while paying a tip-credit wage. This common practice affected all tipped employees who worked at private events.

Class Three satisfies typicality because plaintiffs allege that defendants failed to pay all employees the proper tip-credit and overtime wage after the minimum wage increase in July 2010. The alleged violation affected all tipped employees, according to plaintiff. Therefore, the typicality requirement of Rule 23(a) is satisfied.

**D.        Superiority of Class Action Method**

The second prong of Rule 23(b)(3) is satisfied when it is shown that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Defendants challenge plaintiffs' claim that the class action method is the superior means of resolving this case, arguing that individualized liability and damages issues would overwhelm the court, and that plaintiffs' class lacks interest from potential members.

Plaintiffs allege that a class action would allow for consistency of judgments, and that judicial economy and efficiency would dictate a certification of this class. The court agrees that a class action is the superior method. Although the damages questions for members of the class may vary, the liability determination is best adjudicated once, in the class form. Individualized damage claims do not render class actions inappropriate. Butler v. Sears, Roebuck & Co., 11-8029, 2013 WL 4478200, at *5 (7th Cir. Aug. 22, 2013) ("If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification."). Nor are plaintiffs required to make a showing that other individuals would join the lawsuit to

12

meet the superiority requirement. See Garcia v. Salamanca Grp., Ltd., 07 C 4665, 2008 WL 818532 (N.D. Ill. Mar. 24, 2008) ("[T]his court must likewise reject the rule proposed by defendants that would require a plaintiff to come forward with evidence that there are other employees who desire to opt-in."). Plaintiffs' proposed classes satisfy the superiority requirement.

## II.     Class Definition

Defendants also contest the language of the class definitions. Plaintiffs have requested that all classes be defined with a start date of February 1, 2008. Although the statute of limitations for each violation of the IMWL is three years, plaintiffs argue that the statute of limitations should be tolled based on defendants' attempts to hide the deficient tipped wags and overtime wages from employees beginning in July 2011. Plaintiffs argue that defendants' internal audit and "defendants' effort to hide the South Barrington violations" warrant tolling of the statute of limitations. In response, defendants contend that "[e]quitable tolling is a doctrine used sparingly, reserved for those situations in which extraordinary circumstances prevent a party from filing on time." Bensman v. U.S. Forest Serv., 408 F.3d 945, 964 (7th Cir. 2005) (citing Wilson v. Battles, 302 F.3d 745, 749 (7th Cir. 2002)).

Equitable tolling "applies only to cases in which circumstances prevent a litigant from filing despite the exercise of due diligence, regardless of the defendant's conduct." Id. Regarding Class Three, no violation is alleged to have occurred prior to July 2010, and there is no reason to extend the class period to a date prior to that date. Further, defendants are alleged to have engaged in deception to hide violations only from Class Three. Plaintiffs have not demonstrated

13

any valid reason to toll the statute of limitations with regard to Classes One and Two. The court therefore declines to toll the statutes of limitations for the three classes.

**III.    FLSA Certification**

At this stage of the proceedings, the court must determine whether plaintiff has made a "modest factual showing" sufficient to demonstrate that plaintiff and other putative plaintiffs together were potentially victims of a common policy or plan that violated the FLSA. Gambo v. Lucent Technologies, Inc., 05 C 3701, 2005 WL 3542485 at *5 (N.D. Ill. Dec. 22, 2005).[4] Plaintiffs have made this modest factual showing. As demonstrated above, plaintiffs have presented sufficient evident to suggest that defendants paid employees below minimum wage and failed to correctly pay overtime wages, either by failing to adjust the 2010 wage rate, requiring employees to engage in side work not related to tipped duties, or by insufficiently compensating employees who worked private events.

Plaintiffs' contention that tipped employees were not informed of the requirements of the FLSA may also be determined on a class wide basis. Defendants argue that there is no set policy for when or how defendants inform their employees about the requirements of the FLSA, and so the determination of whether class members were in fact informed will require individual discovery. Plaintiffs counter that it is defendants' burden to prove that they complied with the requirements of Section 3(m) and are entitled to the tip-credit. See Dominguez v. Quigley's Irish

---

[4]Defendants cite Espenscheid v. DirectSat USA, LLC, 705 F.3d 770, 772 (7th Cir. 2013), to support their argument that class notification under the FLSA should be examined under the same rigorous standard as Rule 23(a) certification, or at least under an "intermediate" approach followed by courts in the Ninth Circuit. Espenscheid involved the review of a decertification order that had been entered after significant discovery and the opt-in period, which is not the posture of this preliminary motion for notice to the FLSA class. Additionally, the Espenscheid court specifically noted that the differences in class actions and collective actions did not bear on that particular case, and thus the standards could be merged in that case. The court does not read Espenscheid as changing the law of the circuit with regard to FLSA first-step evaluation.

Pub, Inc., 790 F. Supp. 2d 803, 818 (N.D. Ill. 2011). Because defendants bear the burden of demonstrating compliance with the FLSA, the court will allow plaintiffs' claim to proceed. For these reasons, the court grants plaintiffs' motion to proceed as a collective action. Because the form of the notice attached to that motion has been contested by defendants' counsel, they are directed to confer with plaintiffs' counsel and submit a revised draft notice to the court (red-lined to indicate any disagreement in form) on or before October 15, 2013.

## CONCLUSION

For these reasons, the court grants plaintiffs' motion for conditional certification of a class action and issuance of a notice of the collective action. A status hearing is set for October 23, 2013, at 9:15 a.m. At that time the court will address any questions or concerns it has with respect to the form of the notice.

**ENTER:** September 26, 2013

_____
**Robert W. Gettleman
United States District Judge**