IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIK JOHNSON and MATTHEW TOPORSKI, on behalf of themselves and all other persons similarly situated, known and unknown,<br><br>               Plaintiffs,<br><br>  v.<br><br>PINSTRIPES, INC., PINSTRIPES NORTHBROOK, LLC, and DALE R. SCHWARTZ,<br><br>               Defendants. | Case No. 12 C 1018<br><br>Judge Gettleman<br><br>Magistrate Judge Keys |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL
OF THE PARTIES' CLASS ACTION SETTLEMENT**

Douglas M. Werman
Maureen A. Salas
Sarah J. Arendt
Werman Salas, P.C.
77 West Washington, Suite 1402
Chicago, Illinois 60602
312/419-1008

Jamie G. Sypulski
Law Office Jamie Golden Sypulski
150 North Michigan Avenue, Suite 1000
Chicago, Illinois 60601
312/332-6202

## I. INTRODUCTION

This Court granted preliminary approval of the Parties' Class Action Settlement Agreement on August 6, 2014. ECF No. 95.[1] The Parties now seek final approval of that Class Action Settlement because it is "fair, adequate and reasonable."

Class Counsel sent notice of the Class Action Settlement to 626 Class Members. (The Settlement does not require Class Members to submit claim forms.) No Class Member filed an objection to the Settlement, and no Class Member sought exclusion from the Settlement. The average Class Member Settlement Payment is approximately $364.00; the largest Settlement Payment is $3,470.32; the minimum Settlement Payment to any Class Member is $50.00.

For the reasons further explained below, Class Representatives and the Class request that the Court enter an order of final approval, in the form attached hereto as Attachment 1.

## II. STATEMENT OF FACTS

### A. Factual And Procedural Background

This lawsuit was filed on February 13, 2012, and arises under the Fair Labor Standards Act, 29 U.S.C. §201, *et. seq.* (FLSA), the Illinois Minimum Wage Law (IMWL), 820 ILCS 105/1, *et seq.*, and the Illinois Wage Payment and Collection Act (IWPCA), 820 ILCS 115/1, *et. seq.*, for Defendants' failure to pay Plaintiffs and other similarly-situated current and former tipped employees earned minimum wage, overtime wages and straight-time wages. As relevant to this case, Defendants Pinstripes, Inc., and Pinstripes Northbrook, LLC, own and operate a dining and entertainment venue in South Barrington and Northbrook, respectively, under the name "Pinstripes." Dale R. Schwartz is the chief executive officer of both Pinstripes entities.

---

[1] All capitalized terms are defined in the Settlement Agreement. *See* Mem. Supp. Mot. Prelim. App'l, Ex. A, Class Action Settlement Agreement (ECF No. 93-1, at PageID#812).

On September 26, 2013, the Court certified Plaintiffs' Rule 23 class action, certifying the following three classes:

*Class One*: All persons employed by defendants at the Northbrook Pinstripes and South Barrington Pinstripes, from February 13, 2009, to the conclusion of this action, who worked as tipped employees earning a sub-minimum, tip credit wage rate, and who performed duties unrelated to their tipped occupation, for which they were not paid minimum wage.

*Class Two*: All persons employed by defendants at the Northbrook Pinstripes and South Barrington Pinstripes, from February 13, 2009, to the conclusion of this action, who worked as tipped employees earning a sub-minimum, tip credit wage rate, and who worked private events in which a "service charge" was paid by the customer.

*Class Three*: All persons employed by defendants at the Northbrook Pinstripes and South Barrington Pinstripes, from February 13, 2009, to the conclusion of this action, who were not paid the proper minimum wage rate or overtime at the properly calculated time and one-half rate, plus two percent damages under the IMWL.

Also on September 26, 2013, the Court conditionally authorized the FLSA claims to proceed as a collective action under 29 U.S.C. § 216(b).

On March 4, 2014, the Parties engaged in a private mediation with Lynn Cohn. Professor Cohn is the Director of the Program on Negotiation and Mediation at Northwestern University School of Law, and has taught negotiations and dispute resolution to law students for over 20 years. The mediation with Professor Cohn was successful, and the Settlement Agreement represents the final expression of the Parties resolution of the Action. *See* Mem. Supp. Mot. Prelim. App'l, Ex. A, Class Action Settlement Agreement (ECF No. 93-1, at PageID#812).

### B. The Court's Preliminary Approval Order and Class Notice

On August 6, 2014, the Court granted preliminary approval of the Settlement. Order, ECF No. 95.

On August 22, 2014, Defendants' Counsel forwarded a Class list with names and last

known addresses of Class Members. Ex. 1, Calderon Decl., ¶ 2.[2] The list included 628 individuals; however, addresses of 56 individuals were missing. *Id.* On October 6, 2014, Defendants' Counsel forwarded a supplemental list with an additional 54 addresses. *Id.* at ¶ 3.

On October 17, 2014, Class Counsel served Class Notice to 626 Class Members on the Class List, as directed by the Court and detailed in the Settlement. *Id.* at ¶ 4. For each Class Member, the Notice included an estimated Settlement Payment that the individual is expected to receive. *Id.* Class Members were afforded 60 days to file an exclusion, to file an objection or to otherwise comment on the Settlement. *Id.*; *see also* Ex. A, Exemplar Notice.

To date, 134 Class Notices were returned to Class Counsel by the U.S. Postal Service. *Id.* at ¶ 6. Twenty-eight (28) Notices were remailed to updated addresses; 112 Notices were undeliverable. However, at the time that Class Counsel distributes the Initial Class Settlement Payments, Class Counsel will re-run any out-of-date addresses in order to obtain current addresses for all Class Members.[3]

In addition to the Notice, interested Class Members could obtain additional information from Class Counsel, and 10 individuals communicated with Class Counsel regarding the Settlement. Ex. 1, Calderon Decl., ¶ 7.

No Class Members objected to the terms of the Settlement, and no Class Members sought exclusion from the Settlement. *Id.*, ¶ 10.

---

[2] The complete Class Member List shall be filed with the Court prior to the Final Approval Hearing date.

[3] Further, in Class Counsel's experience the settlement payment distribution process engenders a lot of communication among Class Members, with the result that previously unreachable individuals contact Class Counsel.

**III.     THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF RULE 23 AND THE NOTICE PROCEDURES SET FORTH IN THE PRELIMINARY APPROVAL ORDER**

In the Preliminary Approval Order, the Court determined that the form, content, and proposed distribution of the Class Notice met the requirements of federal law and due process, and was the best notice practicable under the circumstances. Order, August 6, 2014, ECF No. 95, ¶ 5.

The federal rules require the Court to direct to Class Members the "best notice practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). As the Supreme Court has held, notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2). 417 U.S. at 173. Where the names and addresses of class members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id*. at 175.

Class Counsel's effort to effectuate notice to Class Members, as described above, meets the requirements of Rule 23(c)(2)(B).

**IV.     FINAL APPROVAL IS APPROPRIATE PURSUANT TO RULE 23(E) BECAUSE THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE**

Settlement of class action litigation is favored by federal courts. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Although class settlements must be approved by the district court, the court's inquiry is limited to the consideration of whether the proposed settlement is fair, reasonable, and adequate. *Id*. In determining whether a class settlement meets that standard, courts in the Seventh Circuit consider a variety of factors including:

> (a) the strength of plaintiffs' case, weighed against the settlement offer; (b) the complexity, length, and expense of further litigation; (c) the presence of collusion between the parties; (d) the opinion of competent counsel; (e) the reaction of class members to the proposal; and (f) the stage of proceedings and

5

discovery completed.

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) *citing Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 308 (7th Cir. 1985). In analyzing a class settlement, the district court must consider the facts in the light most favorable to the settlement. *Id.* The determination that a settlement is fair is left to the sound discretion of the trial court. *Armstrong v. Bd. of Sch. Dist.*, 616 F.2d 305, 313-14 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

    A.    **The Settlement is Fair, Adequate, and Reasonable**

        1.    **Strength of Plaintiffs' Case As Compared to the Amount of the Settlement and Allocation of the Settlement Payment**

In assessing the fairness of a class settlement, the most important factor is the strength of the plaintiff's case on the merits compared with the amount offered in the settlement. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2005). "In conducting this analysis, the district court should begin by 'quantifying the net expected value of continued litigation to the class.' To do so, the court should 'estimate the range of possible outcomes and ascribe a probability to each point on the range.'" *Id., quoting Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284-85 (7th Cir. 2002) (internal citation omitted).

Although the Seventh Circuit has recognized that precision in valuing a case cannot be expected, the court should require that the parties present evidence that would enable estimates of possible outcomes, so that the court can at least come up with a "ballpark valuation." *Id. quoting Reynolds*, 288 F.3d at 285. In essence, a court must weigh the value of the proposed settlement against the total amount that the class could recover, discounted by the weaknesses and risks inherent in the class's claims.

The Settlement here is an excellent result for the Class. The Gross Settlement Amount

6

replicates what a full recovery at trial would reflect.

This case raised the issue of whether tipped employees were required to perform non-tipped duties. Time spent by tipped employees performing non-tipped duties must be paid at full minimum wage. *See Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (tipped employees performing non-tipped duties must be paid full minimum wage for that work). In Class Counsel's experience, the percentage of non-tipped duties performed by tipped employees in casual-dining restaurants ranges from 20 to 33 percent of total work time. Ex. 2, Werman Decl., ¶ 6; *and see, e.g., Driver v. AppleIllinois, LLC,* 890 F. Supp. 2d 1008, 1019-25 (N.D. Ill. 2012) (detailed analysis of time worked compared with time worked at non-tipped duties falling within that range). The Settlement here reflects 33 percent recovery of time worked, including the two-percent per month of statutory additional damages, and thus approximates full relief available at trial were the Class to prevail on all claims.

### 2. Complexity, Length, And Expense of Further Litigation

The second factor to be considered by a court is the complexity, length, and expense of litigation that will be avoided by the proposed settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1019.

In the absence of this Settlement, and even after three years of litigation, a substantial additional effort would have been necessary to bring this action to trial. Defendants aggressively defended this case, and would have continued to do so. Whatever the outcome at trial, the Parties would have confronted appellate litigation.

This additional litigation would have increased the expense, but would not have reduced the risk to the Class. *See Isby*, 75 F.3d at 1199; *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1019; *Great Neck Capital Appr. Inv. P'ship, L.P. v. Pricewaterhouse Coopers*, 212 F.R.D. 400, 409-10 (E.D. Wis. 2002).

As measured against the remaining burden, expense, and risk for Named Plaintiffs and the Class, the issue of further litigation militates in favor of approval of the Parties' Settlement.

### 3. The Settlement Was the Result of Arm's-Length Negotiations Free From Collusion

In determining whether a settlement was reached absent any collusion between the Parties, courts look to whether the settlement is "intense, vigorous, and at arm's length." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020.

The Parties began settlement negotiations just months after the case was filed, and periodically throughout the litigation the Parties discussed settlement. That effort gained momentum after the grant of class certification and notice to the Class, and on December 11, 2013, counsel for the Parties agreed to begin settlement discussions in earnest. On March 4, 2014, after numerous communications on settlement, the Parties reached agreement on the material terms of this Settlement after a day-long mediation with Professor Cohn.

Such arm's length negotiations conducted by competent counsel constitute *prima facie* evidence of a fair settlement. *M. Berenson Co., Inc., v. Fanueil Hall Marketplace*, *Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair."). In the absence of any evidence of collusion, this factor favors final approval of the settlement. *Winston v. Speybroeck*, No. 3:94-CV-150AS, 1996 U.S. Dist. LEXIS 12131, at *15-16 (N.D. Ind. Aug. 2, 1996).

The Court should find that the Settlement meets the requirements of Rule 23(e) and was the result of arm's-length bargaining. *See Meyenburg v. Exxon Mobil Corp.*, No. 3:05-cv-15-DGW, 2006 U.S. Dist. LEXIS 97057, at *16 (S.D. Ill. Jun. 6, 2006) (history of the litigation demonstrates that the settlement was arm's length).

8

### 4. Opinion of Counsel

Class Counsel are experienced in wage and hour class-action litigation, and in particular with regard to non-tipped duties, or 'dual job,' litigation, and had a substantial amount of information to evaluate this case. The Settlement was reached after lengthy and extensive negotiations. In Class Counsel's opinion, the Settlement is fair, reasonable and adequate. Ex. 2, Werman Decl., ¶ 6. It is appropriate for the Court to place significant weight on the strong endorsement of this Settlement by Class Counsel. *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020; *see also Meyenburg*, 2006 U.S. Dist. LEXIS 97057, at *17-8.

### 5. Lack of Objections to The Settlement

An absence of objections by class members is a significant factor in determining whether the proposed class settlement is reasonable to the class as a whole. *See Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1169 (N.D. Ill. 1997) (finding the settlement fair where a small number of class members objected); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226-27 (S.D. Ill. 2001) (same); *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (noting that "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

Here, no Class Members objected to the Settlement and no Class Member sought exclusion. Ex. 1, Calderon Decl., ¶ 10. Thus, this factor also strongly supports final approval of the Settlement.

### 6. Stage of the Proceedings and the Amount of Discovery Completed

This case was filed nearly three years ago, and in the course of written discovery and deposition testimony, briefing on class certification, and review of time and payroll data, the case has progressed to a stage where this Court and the Parties could evaluate the merits of the case,

potential damages, and the probable course of future litigation.

Thus, the stage of the proceedings also warrants approval of the Settlement. *See Winston*, 1996 U.S. Dist. LEXIS 12131, at *15-16 (class counsel investigation sufficient to establish strengths and weaknesses of case); *Meyenburg*, 2006 U.S. Dist. LEXIS 97057, at *19 (counsel's investigation and discovery extensive and thorough).

### B. The Settlement is Appropriate

The Settlement Class has been represented by experienced counsel, and Class Members have indicated their desire to accept the terms of the Settlement. Ex. 1, Calderon Decl., ¶10. Therefore, Class Representatives request that the Court approve this Settlement.

## V. THE SERVICE AWARD FOR NAMED PLAINTIFFS AND THOSE THAT MATERIALLY ASSISTED IN THE LITIGATION IS APPROPRIATE

In class actions, class representatives are entitled to service awards by virtue of their service to absent class members. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.*

Class Counsel seek Service Awards for Class Representatives Erik Johnson and Matthew Toporski in the amount of $10,000.00 each. Class Representatives made a substantial contribution to the outcome of this case, and the Service Award is well deserved. They provided documents, information and substantial assistance to Class Counsel throughout the course of the litigation, and without their efforts this Settlement would not have been achieved to the benefit of

absent Class Members. As a result of those efforts and the results achieved, the Service Award is fully justified.

## VI. THE PAYMENT OF ATTORNEYS' FEES EQUAL TO ONE-THIRD OF THE SETTLEMENT FUND IS REASONABLE

As discussed in the memorandum in support of Preliminary Approval, under the common fund doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). The common fund doctrine "is based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard,* 504 F.3d 688, 691-92 (7th Cir. 2007) *citing Skelton v. Gen. Motors Corp.,* 860 F.2d 250, 252 (7th Cir. 1988). Consequently, Class Counsel's request for one-third of the Settlement Fund as attorneys' fees should be approved, as it is adequately supported by the record.

### A. The Percentage-of-the-Fund Method of Awarding Attorneys' Fees is Appropriate in Common Fund Cases

Attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services. *Silverman v. Motorola Solutions, Inc.*, 12-2339, 2013 WL 4082893, *1 (7th Cir. Aug. 14, 2013), *citing In re Continental Illinois Securities Litigation,* 962 F.2d 566, 572 (7th Cir.1992); *In re Synthroid Marketing Litigation,* 264 F.3d 712, 718 (7th Cir.2001); *In re Synthroid Marketing Litigation,* 325 F.3d 974, 975 (7th Cir.2003). Thus, the Seventh Circuit has directed district courts to employ the percentage of the fund method to determine an appropriate fee award in common fund cases. *See Taubenfeld v. AON Corp.*, 415 F.3d 597, 599-600 (7th Cir. 2005).

11

As Judge Posner recently explained, "in determining the reasonableness of the attorneys' fee agreed to in a proposed settlement, the central consideration is what class counsel achieved for the members of the class rather than how much effort class counsel invested in the litigation." *Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014). Indeed, the "use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive." *Schulte v. Fifth Third Bank*, No. 09 C 6655, 2011 U.S. Dist. LEXIS 83423, at *103, n. 27 (N.D. Ill. July 29, 2011) *citing Will v. General Dynamics Corp.*, No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349, at *3 (S.D. Ill. Nov. 22, 2010).

An attorneys' fee award of one-third of the common fund is consistent with the standard contingent fee percentage in this legal marketplace for comparable litigation. *See Teamsters Local Union No. 604 v. Inter-rail Transp., Inc.,* No. 02 C 1109-DRH, 2004 U.S. Dist. LEXIS 6363, at *3-4 (S.D. Ill. Mar. 19, 2004) ("In this Circuit, a fee award of thirty-three and one-third (33 1/3%) in a class action is not uncommon.").

### B. The Attorneys' Fee Request is a Reflection of the Relevant Market

To determine what percentage of the fund should be awarded, the district courts also look to the market price for legal services in comparable litigation. *See Teamsters Local Union No. 604,* 2004 U.S. Dist. LEXIS 6363, at *3-4. In wage and hour litigation – like this case – fee awards of one-third are traditional in common fund cases. *Rusin v. Chicago Tribune Company,* No. 12 C 1135, ECF No. 41 (N.D. Ill.) (awarding one-third of a $660,000 common fund in IMWL class action); *Hardaway v. Employbridge of Dallas, Inc., et al.,* Case No. 11 C 3200, ECF No. 73 (N.D. Ill.) (awarding one-third of $1,500,000.00 common fund in IWPCA, IDTLSA, and IMWL unpaid wage class action); *Peraza v. Dominick's Finer Foods, LLC,* Case No. 11 C 8390, ECF No. 52 (N.D. Ill.) (awarding one-third of $1,450,000 common fund in IMWL overtime pay class action); *Romo v. Manpower, Inc.,* Case No. 09 C 3429, ECF No. 249

12

(N.D. Ill.) (awarding one-third of $8,000,000 common fund in IPWCA vacation pay forfeiture class action); *Rosales v. The Placers, Ltd.,* Case No. 09 C 1706, ECF No. 162 (N. D. Ill.) (awarding one-third of $1,650,000 common fund in IWPCA vacation pay forfeiture class action); *Williams v. Volt Management Corp*, Case No. 10 C 3927, ECF No. 52 (N.D. Ill.) (awarding one-third of $2,500,000 common fund in IWPCA vacation pay forfeiture class action); *Schmidt v. Smith & Wollensky LLC*, Case No. 09-2752, ECF No. 78 (N.D. Ill) (awarding one-third of common find in IMWL minimum wage and overtime pay case).

In addition, Class Counsel agreed to litigate this case on a contingency-fee basis, and thus took the risk that they would obtain no recovery at all. Ex. 2, Werman Decl., ¶ 8. And Class Counsel was fully prepared to prosecute and finance this litigation for as long as necessary. *Id.*

Based upon the typical compensation in similar cases, the risk Class Counsel undertook in engaging in this litigation, the quality of legal services rendered, the uncertainty of recovery and the results obtained, Class Counsel is entitled to a reasonable attorneys' fees award of one-third of the Settlement Fund.

**C. The Payment of Class Counsel's Costs, Including Costs Of Administration, Is Appropriate**

The Settlement provides that Class Counsel may apply to the Court for payment of costs and expenses, including costs of administration of the Settlement. Class Counsel incurred costs in this matter totaling $11,358.48, which includes costs to be incurred in distributing Settlement Payment checks. Ex. 2, Werman Decl., ¶ 10. Class Counsel's request of that amount from the Settlement Fund as payment of costs and expenses is appropriate, as these costs and expenses were necessarily incurred in order to litigate, to settle and to administer this Settlement. Thus, reimbursement of costs and expenses from the Maximum Settlement Amount is appropriate.

**VII.     NO EXCLUSIONS WERE REQUESTED**

No Class Member requested exclusion from the Settlement.  Ex. 1, Calderon Decl., ¶ 10.

**VIII.    CONCLUSION**

The Settlement is a compromise that takes into account the complex factual and legal issues that confronted the litigants in these cases.  It has been achieved in good faith and through arm's-length negotiations, and is not the product of fraud or collusion.  The record establishes that all the criteria under Rule 23 are met for purposes of settlement, and that the Parties have provided the Class with adequate notice of the terms and conditions of the Settlement in a manner intended to maximize the due process rights of the Class Members.

No Class Member objected to the Settlement, and no Class Member requested exclusion from the lawsuit: this too demonstrates strong support for the Settlement.  Class Counsel have analyzed the claims and issues herein, and believe that the Settlement is fair, reasonable, and adequate and in the best interest of the Class Members.  Thus, the Court should grant final approval of the Settlement and enter the Parties' proposed final approval order.


DATED: January 23, 2015                    Respectfully submitted,

                                           CLASS REPRESENTATIVES ERIK JOHNSON,
                                           MATTHEW TOPORSKI


                                           s/Jamie G. Sypulski
                                           One of Class Counsel